**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | |
|---|---|
| Dawn Hauger, individually and on behalf of all others similarly situated, | 1:21-cv-01270 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Dollar General Corporation, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.  Dollar General Corporation ("defendant") manufactures, labels, markets, and sells crackers purporting to be made predominantly with whole grain graham flour and sweetened primarily with honey under its Clover Valley brand ("Product").



2. The relevant front label representations include "Honey Graham Crackers," a dripping honey dipper, "Made With Real Honey," "Contains 8g of whole grain per serving," and "No high fructose corny syrup."

## I. REPRESENTATIONS OF WHOLE GRAIN GRAHAM FLOUR

3. "Graham" is the biggest word on the front label followed by "Honey."

4. The Product's name, emphasis on the word "Graham," and the dark-colored crackers give reasonable consumers the impression that graham flour – a type of whole grain flour – is the primary and predominant flour ingredient used.

5. Dictionaries confirm what reasonable consumers expect when it comes to a "graham cracker," defining it as "a slightly sweet cracker made of whole wheat flour" and "a semisweet cracker, usually rectangular in shape, made chiefly of whole-wheat flour."[1]

6. This whole grain content distinguishes a graham cracker from other crackers and cookies made with mostly enriched flour, also referred to "white flour" or "refined flour."

7. In whole grain flour, all three parts of the grain are used as opposed to enriched flour, which only uses the endosperm.

---

[1] https://www.dictionary.com/browse/graham-cracker

8. That the "Graham" in "Graham Crackers" admittedly refers to whole grain flour is confirmed by the ingredient list in small print on the side of the Product.

> **INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED RON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE WHEAT FLOUR), SUGAR, HIGH OLEIC CANOLA AND/OR SOYBEAN OIL WITH TBHQ AND CITRIC ACID FOR FRESHNESS, HONEY, CONTAINS 2% OR LESS OF: LEAVENING (BAKING SODA, CALCIUM PHOSPHATE), SALT, NATURAL FLAVOR, SOY LECITHIN, SODIUM SULFITE.

9. Reasonable consumers expect a food identified by the name of a whole grain flour will contain mainly whole grain flour, and more whole grain flour than if the food was merely labeled, "Crackers."

10. However, the ingredient list reveals "Enriched Wheat Flour" is the predominant flour, indicated by its listing ahead of "Graham Flour (Whole Wheat Flour)."

## II.   REASONS CONSUMERS VALUE WHOLE GRAINS

11. Surveys have confirmed that consumers increasingly seek products made with whole grains because they contain more fiber than refined white flour.[2]

12. Specifically, these findings indicate that:

---

[2] FDA-2006-D-0298-0016, Exhibit 1a - "A Survey of Consumers Whole Grain & Fiber Consumption Behaviors, and the Perception of Whole Grain Foods as a Source of Dietary Fiber" - [Kellogg Company - Comment] (July 1, 2010); Docket ID: FDA-2006-D-0298, Guidance for Industry and FDA Staff: Whole Grains Label Statements.

- At least half of consumers expect that for every gram of whole grain per serving, there will be at least a gram of fiber;

- Two-thirds of consumers (67%) agree that whole grain foods are high in fiber;

- Identifying a product with the name of a whole grain flour is equivalent to a representation that the product will predominantly be made with whole grains; and

- 75% of consumers who observe claims that a product is made with, or contains whole grain flour, will expect the food to be at least a good source of fiber.

13. The 2015 Dietary Guidelines for Americans recommended that at least half of the grains in a healthy diet should be whole grains.[3]

14. The FDA cautioned manufacturers against misleading consumers as to whole grain content of foods:[4]

> 7. Question: Does the term "whole grain" mean the same as "100 percent whole grain"? If a product is labeled as "whole wheat bagel" or "whole wheat pizza," how much whole wheat should it contain? What is graham flour?
>
> Answer: FDA has not defined any claims concerning the grain content of foods. However, the agency has established standards of identity for various types of cereal flours and related products in 21 CFR Part 137, including a standard of identity for "whole wheat flour" (§ 137.200) and "whole durum flour" (§ 137.225). Graham flour is an alternative name for whole wheat flour (§ 137.200).
>
> Depending on the context in which a "whole grain" statement appears on the label, it could be construed as meaning that the product is "100 percent whole grain." We recommend that products labeled with "100 percent whole grain" not contain grain ingredients other than those the

---

[3] U.S. DEP'T OF AGRIC. AND U.S. DEP'T OF HEALTH & HUMAN SERVS., *Dietary Guidelines for Americans 2015–2020* (8th ed. 2015), *available at* http://goo.gl/qnyfLi (click "A Closer Look Inside Healthy Eating Patterns" under "Chapter 1. Key Elements of Healthy Eating Patterns").
[4] Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements," Docket No. 2006D-0066, ("Whole Grain Guidance").

agency considers to be whole grains.

15. The FDA has warned companies against making misleading whole grain representations in a product name – "HiHo Deluxe WHOLE WHEAT Crackers" and "Krispy WHOLE WHEAT Saltine Crackers" – where the products were predominantly white flour.[5]

16. The Federal Trade Commission ("FTC") recognized that "[M]any reasonable consumers will likely understand 'whole grain' [claims] to mean that all, or virtually all, of the food product is whole grain, or that all of the grain ingredients in the product are whole grains.[6]

17. By highlighting the Product's whole grain ingredient, "GRAHAM," as part of the product name, larger than everything else on the label, Defendant is highlighting the presence of nutrients associated with whole grains – fiber.[7]

18. Plaintiff and consumers expect a product represented with such "whole grain" claims to provide at least 10 percent ("good source") of the Reference Daily Intake ("RDI") or the Daily Reference Value ("DRV") of fiber.[8]

19. The amount of whole grain wheat flour in the Product is approximately twenty-five percent of the amount of refined flour.

20. This is based on the Nutrition Facts, which upon information and belief, reveals the Product is not a good source of fiber, as it indicates only one gram of fiber (c. 4%) per serving.

21. The front label representation of 8g of whole grain per serving is misleading because this does not tell consumers that graham flour is not the predominant flour.

22. Consumers have no way to reverse calculate the proportion of whole grain graham

---

[5] CSPI Petition to Prohibit Misbranding of Whole Wheat Products and to Promulgate Food Labeling Regulations Concerning Products Made with Whole Wheat, Docket No. 93P-0227 (Jun. 25, 1993).
[6] In the Matter of Draft Guidance for Industry and FDA Staff: Whole Grains Label Statements, Docket No. 2006-0066 Comments of the Staff of the Bureau of Consumer Protection, the Bureau of Economics, and the Office of Policy Planning of the Federal Trade Commission April 18, 2006
[7] 21 U.S.C. § 343(r)(1); 21 C.F.R. § 101.65.
[8] 21 C.F.R. § 101.54(b)-(c).

flour to refined white flour based on the disclosure of 8g of whole grain per serving and a USDA recommendation of 48g whole grain per day.

### III. HONEY IS MISREPRESENTED AS MAIN SWEETENER

23. The representations convey that honey is the primary and/or a significant source as a sweetener.

24. However, the Product is sweetened primarily with sugar and contains a miniscule amount of honey.

    A. <u>Sugar Disfavored as Sweetener</u>

25. In 2014, the National Institutes of Health cautioned, "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation."[9]

26. The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide."[10]

27. There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."[11]

28. In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."[12]

---

[9] NIH, Sweet Stuff: How Sugars and Sweeteners Affect Your Health, October 2014.
[10] *Id.*
[11] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.
[12] Kieron Rooney, Yes, too much sugar is bad for our health – here's what the science says, The Conversation, March 8, 2018.

29. As part of a societal trend toward consuming healthier foods and natural foods, avoidance of added sugar has been and remains a significant consumer preference, with consumers strongly favoring honey as a sugar substitute.

30. At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar.

31. In August 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."[13]

32. As another observer of the food industry explained in May 2017, "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories. . . Sugar reduction will be one of the top marketing claims prominently featured on products in the coming year…"[14]

33. Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase.'"[15]

34. The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar. . . [and of] those avoiding sugar, 85% are doing so for health reasons and 58% for weight concerns."[16]

---

[13] PreparedFoods.com, Trends in Sugar Reduction and Natural Sweeteners, August 24, 2016.
[14] Laura Dembitzer, Less is More: Sugar Reduction, Less Sodium & Low-FODMAPS in Food, Beverage, Food Insider Journal, May 09, 2017.
[15] Ron Sterk, Avoidance of sugar remains macro trend, Food Business News, February 28, 2018
[16] Id.

B. <u>Consumer Preference for Products Sweetened with Honey Instead of Sugar</u>

35. Surveys show "[c]onsumers rated honey at 73% 'better for you than sugar.'"[17]

36. A survey highlighted in "Prepared Foods" magazine in 2018 noted that: (i) "93% of consumers consider honey to be a natural sweetener;" (ii) "58% of consumers with one or more children look for honey on the product label;" (iii) "60% of consumers between the ages of 18 and 34 look for honey on the product label; and (iv) about half of consumers would pay at least 5% more for food bars, ready-to-drink tea, and yogurt primarily sweetened with honey."[18]

37. Referring to food products perceived as healthier, the Huffington Post reported that "[a]ccording to a 2015 Nielsen survey of 30,000 people, 90% of shoppers are willing to pay more for the added quality and benefits" these foods and ingredients provide.[19]

38. Honey fits all these criteria, as it is a naturally occurring substance and, unlike sugar, has small amounts of nutrients such as vitamins, minerals, enzymes, and antioxidants.

39. In addition, honey has a lower glycemic index than sugar, causing slower fluctuations in blood sugar and therefore in insulin levels.

40. Rapid spikes of blood sugar lead to quick spurts of energy followed by sharp declines characterized by tiredness, headaches, and difficulties in concentrating ("low blood sugar").

41. Although sugar contains slightly fewer calories than honey by weight, honey is much sweeter than sugar and therefore less is needed to achieve the same level of sweetness.

42. Based on the common marketplace perception that honey is healthier and more natural than sugar, consumers place a greater value on products that are sweetened with honey instead of sugar and are willing to pay a higher price for such products.

---

[17] *Id.*
[18] Supra, Trends in Sugar Reduction and Natural Sweeteners.
[19] Brian Kennell, Healthy Food Trends Drive New Products, HuffingtonPost.com, October 1, 2015, updated December 6, 2017.

C. <u>Contrary to Representations, Honey is Present in De Minimis Amount and Product Is Sweetened Mainly with Sugar</u>

43. The Product's ingredients, listed in descending order of predominance, reveal that "Sugar" is the predominant sweetening agent and "Honey" is least predominant.

> **INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED RON, THIAMIN MONONITRATE, RIBOFLAVIN, FOLIC ACID), GRAHAM FLOUR (WHOLE WHEAT FLOUR), ==SUGAR==, HIGH OLEIC CANOLA AND/OR SOYBEAN OIL WITH TBHQ AND CITRIC ACID FOR FRESHNESS, ==HONEY==, CONTAINS 2% OR LESS OF: LEAVENING (BAKING SODA, CALCIUM PHOSPHATE), SALT, NATURAL FLAVOR, SOY LECITHIN, SODIUM SULFITE.

44. By comparing the sugar profile of the Product with the sugar profile of honey, the amount of honey can be estimated slightly above 2%, which is consistent with its placement ahead of the "Contains 2% or Less Of" statement on the ingredient list.

D. <u>The Product Contains Natural Flavor Which Imitates Honey, Causing Consumers to Expect a Greater Amount of Honey</u>

45. Consumer preference is for foods which get their taste from food ingredients – like honey – instead of added flavor because it is perceived as more natural and less processed than a flavor solution made by a chemist in a laboratory.

46. No less than 70% of consumers try to avoid all added flavors, because even "natural" flavors have been linked to detrimental health effects, containing additives, and made with

environmentally harmful solvents.

47. All demographics of consumers would pay more for foods with no added flavors, which meant the food gets its taste from its food ingredients.

48. Unfortunately for consumers, what consumers may recognize as a "honey" taste is not from honey, but from "Natural Flavor," listed in the ingredient list.

49. The front label fails to disclose the Product is "natural honey flavored," even though this statement is required under federal and state law.

50. The added natural flavor enhances and simulates the flavor provided by the negligible amount of honey, causing consumers to expect it has more honey than it does.

51. Consumers are misled to expect a non-negligible amount of honey because they see the honey dipper and the word "honey."

52. Instead, consumers do not receive enough honey because the natural flavor is needed to simulate the taste of honey.

53. Even if consumers view natural flavor on the ingredient list, they will not know this provides and/or contributes to the Product's honey taste.

### IV.  DEFENDANT'S REPRESENTATIONS MISLEAD CONSUMERS

54. Federal and identical state regulations prohibit false and deceptive practices with respect to labeling food and beverages. *See* Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(a)(1) (a food is misbranded if "its labeling is false or misleading in any particular."); Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal [food labeling] regulation automatically adopted…takes effect in this State on the date it becomes effective as a Federal regulation.").

55. The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

56. Product names can be misleading when they suggest one or more, but not all, of the key ingredients, like whole grain graham flour, yet fail to disclose other more predominant ingredients like refined flour.

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

21 C.F.R. § 101.18(b).

57. Federal and state regulations require that a product's name disclose the percentage of whole grain graham flour and honey, because these are characterizing ingredients. 21 C.F.R. § 102.5(b).

58. Whole grain graham flour and honey are characterizing ingredients because their proportion has a material bearing on price and consumer acceptance of the Product.

59. Whole grain graham flour and honey are also characterizing ingredients because the labeling creates an erroneous impression they are present in amounts greater than they are.

60. Crackers that have graham flour as their predominant flour exist in the marketplace and are not technologically or otherwise unfeasible to produce.

## V.     CONCLUSION

61. Whether a product contains the amount and/or proportion of whole grain graham flour and honey indicated or alluded to is basic information consumers rely on when making decisions at the store.

62. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

63. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

64. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

65. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

66. The Product is sold for a price premium compared to other similar products, no less than approximately $2.00, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

Jurisdiction and Venue

67. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

68. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

69. Plaintiff Dawn Hauger is a citizen of Illinois.

70. Defendant Dollar General Corporation is a Tennessee corporation with a principal place of business in Goodlettsville, Davidson County, Tennessee.

71. Plaintiff and defendant are citizens of different states.

72. Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

73. Venue is in the Peoria Division because plaintiff resides in Putnam County, which is where the events giving rise to the present claims occurred.

Parties

74. Plaintiff Dawn Hauger is a citizen of Magnolia, Putnam County, Illinois.

75. Defendant Dollar General Corporation, is a Tennessee corporation with a principal place of business in Goodlettsville, Tennessee, Davidson County.

76. Defendant is an American chain of variety stores with over 17,000 stores in the continental United States.

77. Founded as a family-owned dry goods emporium, the company rapidly expanded in rural and underserved areas.

78. Defendant has grown to become one of the most profitable stores in country, with revenue nearing $27 billion in 2019.

79. Where "dollar stores" previously contained items of substandard quality, Dollar General's economies of scale and ability to quickly adapt to changing consumer demand have allowed it to thrive by offering higher quality goods.

80. Defendant sells national brands and its Clover Valley private label, or store brand.

81. Defendant's tough negotiating tactics with manufacturers of leading national brands means they will often produce their high-quality products to be sold under the Clover Valley label.

82. These items are equivalent in quality to, and often exceed, the national brand competitors, based on Dollar General's exacting specifications and criteria.

83. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at Defendant's stores, including at 710 IL-117 Toluca, IL 61369, between February and March 2021, among other times.

84. Plaintiff bought the Product because she expected it contained a predominant amount of whole grain flour and honey relative to enriched flour and sugar.

85. Plaintiff did not expect the Product to contain a significant percent less of these ingredients.

86. Plaintiff knew that Clover Valley was a brand with an established reputation for quality and expected it would live up to its word on the Product's composition.

87. Plaintiff bought the Product at or exceeding the above-referenced price.

88. Plaintiff relied on the representations identified here.

89. Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

90. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

91. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

92. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

## Class Allegations

93. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

**Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.

**Consumer Fraud Multi-State Class:** All persons in the States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[20]

94. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

95. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

96. Plaintiff is an adequate representative because her interests do not conflict with other members.

97. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

98. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

99. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

100. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

101. Plaintiff incorporates by reference all preceding paragraphs.

---

[20] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

102. Plaintiff and class members desired to purchase a product that contained a predominant amount of whole grain flour and honey relative to enriched flour and sugar.

103. Defendant's false and deceptive representations and omissions about the relative amounts of whole grains and honey are material in that they are likely to influence consumer purchasing decisions.

104. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

105. Plaintiff relied on the representations and omissions.

106. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

107. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

108. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

109. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

110. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

111.  The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained a predominant amount of whole grain flour and honey relative to enriched flour and sugar.

112.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

113.  This duty is based on Defendant's outsized role in the market for this type of product, because Dollar General is the largest national chain of stores, where consumers get maximum value for their money.

114.  Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

115.  Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

116.  The Product did not conform to its affirmations of fact and promises due to defendant's actions and was not merchantable because it was not fit to pass in the trade as advertised.

117.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

118.  Defendant had a duty to truthfully represent the Product, which it breached.

119.  This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodians and owners of the Clover Valley brand, known for its high-quality goods, even exceeding that of the national brands.

120. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a leader in supplying honest products to consumers, especially in rural, underserved areas.

121. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

122. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

123. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained a predominant amount of whole grain flour and honey relative to enriched flour and sugar.

124. Defendant possesses specialized knowledge regarding the relative amounts of whole grain and honey content of the Product.

125. Moreover, the records Defendant is required to maintain provide it with actual and/or constructive knowledge of the falsity of the representations.

126. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

127. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

WHEREFORE, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   September 24, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com